UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RBS ASSET FINANCE, INC.,

    Plaintiff,

vs.

CASE NO. 05-CV-72681
HON. LAWRENCE P. ZATKOFF

FACUNDO BRAVO, BRAVO FAMILY,
L.L.C., BERKLEY MACHINE PRODUCTS,
INC., U.B.I. LEASING, INC., and REINHART
INDUSTRIES, INC.,

    Defendants.
_____/

## OPINION AND ORDER

AT A SESSION of said Court, held in the
United States Courthouse, in the City of Port Huron,
State of Michigan, on the 8th day of November, 2005.

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

This matter is before the Court on RBS Asset Finance, Inc.'s ("RBS") Motion for Preliminary Injunction, wherein RBS asks the Court to enjoin defendant Reinhart Industries, Inc. ("Reinhart") from selling substantially all of its assets. Reinhart has filed a Response Brief and RBS has filed a Reply Brief. In addition, the Court heard oral arguments by counsel for RBS and counsel for Reinhart on this date. For the reasons set forth herein, RBS's Motion for Preliminary Injunction is DENIED.

## II.  BACKGROUND

On June 26, 2002, RBS executed a loan agreement with Uni-Boring, whereby RBS agreed to loan Uni-Boring approximately $6.5 million (the "Loan Agreement").  Reinhart, a wholly-owned subsidiary of Uni-Boring, executed a Guaranty of the Loan Agreement (as did the other named defendants in this matter, none of which are relevant to the Preliminary Injunction hearing).

In May and June 2005, Uni-Boring failed to make its scheduled payments under the Loan Agreement and Reinhart (and the other guarantors-defendants) also failed to make the payments on Uni-Boring's behalf.  On June 9, 2005, Uni-Boring filed for bankruptcy protection under Chapter 11.  Reinhart was not included in the Uni-Boring bankruptcy estate because it is operated as a separate and distinct business with its own management, secured lender, assets and liabilities.

On May 20, 2005, RBS demanded payment on the outstanding balance due under the Loan Agreement and provided notice of that demand to Uni-Boring and the guarantors, including Reinhart.  As of June 1, 2005, the outstanding unpaid balance under the Loan Agreement was $2,075,437.17, plus expenses.  On July 7, 2005, RBS filed the instant action to enforce payment under the Loan Agreement by Reinhart and the other guarantors.

Over the past couple of months, Reinhart has been in negotiations to sell most of its assets to S.B. Investments, L.L.C., and a proposed Asset Purchase Agreement has been prepared.  Uni-Boring has asked the Bankruptcy Court to authorize Uni-Boring to vote its shares (all of the Reinhart shares) in favor of the proposed sale, and a hearing on that matter is scheduled for November 10, 2005, before the Bankruptcy Court.  Uni-Boring did provide financial and background data regarding the sale of Reinhart's assets to RBS, among others.  RBS filed the instant motion for preliminary injunction on October 11, 2005, asking this Court to enjoin Reinhart from selling its

assets.

### III.  PRELIMINARY INJUNCTION STANDARDS

A court is to consider the following four factors in determining whether a plaintiff is entitled to a temporary restraining order or other preliminary injunctive relief:

(A) whether the movant has shown a strong or substantial likelihood or probability of success on the merits;

(B) whether the movant has shown that he or she would suffer irreparable harm if the preliminary relief is not issued;

(C) whether the issuance of a preliminary injunction will not cause substantial harm to third parties; and

(D) whether the public interest would be served by the issuance of a preliminary injunction.

*Sandison v. Michigan High School Athletic Association, Inc.*, 64 F.3d 1026, 1030 (6th Cir. 1995); *UASCO Coal Co. v. Carbomin Energy, Inc.*, 689 F.2d 94, 98 (6th Cir. 1982); *Mason County Med. Ass'n v. Knebel*, 563 F.2d 256, 261 (6th Cir. 1977).  The standard for preliminary injunction is not a rigid and comprehensive test, and the four factors are to be balanced, not prerequisites that must be satisfied, but instead "these factors simply guide the discretion of the court; they are not meant to be rigid and unbending requirements." *In re Eagle-Picher Indus., Inc.* 963 F.2d 855, 859 (6th Cir. 1992).

### IV.  ANALYSIS

RBS's motion for preliminary injunction is based on the following provision of the Guaranty executed by Reinhart:

> **Fundamental Changes.** [Reinhart] will not enter into any merger, consolidation, reorganization, or recapitalization, or reclassify its capital stock, or liquidate, wind up, or dissolve itself (or suffer any liquidation or dissolution), or ***convey, sell assign [sic], lease or otherwise dispose of, in one transaction or a series of transactions, all or substantially all of its property or assets***.

Guaranty, ¶5(g). RBS argues that Uni-Boring has defaulted on its obligations under the Loan Agreement and Reinhart has not paid under the Guaranty, at least with respect to the May and June 2005 payments (in its Reply Brief, RBS maintains that Uni-Boring and its guarantors, including Reinhart, have not yet paid RBS in September, October or November). As such, RBS argues that it is likely to succeed on the merits of its breach of contract claim against Reinhart.

The Court is not persuaded by RBS's argument in this case. RBS undeniably filed suit to recover monetary damages as a result of the alleged breach of the Guaranty by Reinhart for failing to make payments on behalf of Uni-Boring when Uni-Boring did not make those payments; RBS's Complaint does not contain any allegation of a breach of contract claim with respect to Reinhart's sale of assets. As such, RBS is asking this Court to ignore over 200 years of American jurisprudence prohibiting the equitable relief of freezing a party's "unencumbered assets . . . before their claims have been vindicated by judgment." *See, e.g., Adler v. Fenton*, 65 U.S. 407 (1861), and *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999).

In *Grupo Mexicano*, the Supreme Court addressed a breach of contract action for money damages. Plaintiff was an investment fund and holder of unsecured interest bearing notes issued by defendant. When defendant defaulted on the notes, plaintiff sued, alleging that defendant "'is at risk of insolvency, if not insolvent already'; that [defendant] was dissipating its most significant asset, the Toll Road Notes, and was preferring its Mexican creditors by its planned allocation of Toll Road Notes to the payment of their claims, and by its transfer to them of Toll Road Receivables; and that

4

these actions would 'frustrate any judgment' [plaintiff] could obtain." *Id.* at 312.

Plaintiff subsequently moved to preliminarily enjoin defendant from transferring the Toll Road Notes or Receivables, which motion the district court (N.Y.) granted, finding that (1) the Notes were the only substantial asset of defendant, (2) plaintiff would be harmed by any proposed transfer of the assets, (3) such transfer would frustrate any judgment plaintiff was seeking, (4) irreparable injury had been demonstrated, and (5) it was almost certain plaintiff would succeed on the merits of its claim. The district court ordered plaintiff to post a $50,000 bond. The Second Circuit affirmed the grant of preliminary injunction. While the case was on appeal to the Second Circuit, the district court continued the case, granting summary judgment to the plaintiff on its contract claim, ordered defendant to pay damages by transferring the Toll Road Receivables or Notes and converted the preliminary injunction into a permanent injunction pending the assignment or transfer of such Receivables or Notes.

The Supreme Court granted certiorari to determine "whether in an action for money damages, a United States District Court has the power to issue a preliminary injunction preventing the defendant from transferring assets in which no lien or equitable interest is claimed." *Id.* at 310. The Supreme Court held that prior to entry of judgment, a creditor cannot invoke a court's equitable powers to freeze assets to be later used to satisfy a money judgment, the relief requested in plaintiff's complaint. *Id.* at 321, 325. The Supreme Court stated that pre-judgment asset freezes, if allowed, would

> radically alter the balance between the debtor's and creditors' rights which has been developed over centuries through many laws - including those related to bankruptcy, fraudulent conveyances, and preferences. Because any rational creditor would want to protect his investment, such might induce creditors to engage in a "race to the court house" in cases involving insolvent or near insolvent debtors,

>   which might prove fatal to the struggling debtor.

*Id.* at 331.

In this case, RBS has no lien or other equitable interest which would give it the right to control assets of Reinhart. In fact, the only right RBS has in Reinhart is an assignment of Reinhart's net receivable from Uni-Boring, an asset which is not to be transferred or disposed of under the proposed Asset Purchase Agreement.

RBS has argued that the instant case is distinguishable from *Grupo Mexicano* because the *Grupo Mexicano* district court made no finding that the asset transfer would have violated the negative covenant. *Relying on Grupo Mexicano*, 528 U.S. at 316 n.2. The Court is not persuaded that there is any difference, however, as both contracts contain a negative pledge and, with respect to the *Grupo* district court's lack of finding on whether the conduct was illegal, the Supreme Court did not say that such a finding would have made a difference as far as the validity of issuing an injunction. Rather, the Court stated:

> We do not, however, understand the District Court to have made a finding – either in the preliminary injunction order or in the final order – that [defendants'] enjoined conduct was unlawful. The mootness of [defendants'] claim at the present stage of the proceedings must be asserted on the basis of what the claim *is*. As shown by the question when we granted certiorari, it is that the District Court wrongfully entered an order to protect its judgment before the judgment was rendered. **If, in fact, the [defendants] had no right under the note instrument to take that actions that were enjoined, that would presumably be a defense to the action on the injunction bond.** See, *e.g., Blumethal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 910 F.2d 1049, 1054 (A.A.2 1990); Note, Recovery for Wrongful Interlocutory Injunctions Under Rule 65(c), 99 Harv. L. Rev. 828, 836 (1986). But it does not bear upon the mootness of [defendants'] present claim.

*Id.* at 315 n.2 (italics in original; bold added).

6

As in *Grupo*, the injunction sought here (to prevent a sale of assets) has nothing to do with succeeding on the merits of its case (recovering a monetary judgment), but rather constitutes an injunction "to protect the anticipated judgment of the court" (i.e., the award of damages for failing to make payment pursuant to the Guaranty).

Accordingly, the Court concludes that it cannot grant RBS's motion, as a matter of law.

## V.  CONCLUSION

For the reasons set forth above, the Court hereby DENIES RBS's motion for preliminary injunction.

IT IS SO ORDERED.

                                        s/Lawrence P. Zatkoff
                                        LAWRENCE P. ZATKOFF
                                        UNITED STATES DISTRICT JUDGE

Dated:  November 9, 2005

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on November 9, 2005.

                                        s/Marie E. Verlinde
                                        Case Manager
                                        (810) 984-3290